UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON LOCKRIDGE,

        Petitioner,

                           CASE NO. 2:09-CV-10145

v.                          JUDGE ARTHUR J. TARNOW

                           MAGISTRATE JUDGE PAUL J. KOMIVES

CINDI S. CURTIN,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *The Plea and Appeal Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     D.    *Complaint Related Claims (Claims I-V and IX-XII)* . . . . . . . . . . . . . . . . . . . . . . . 7
     E.    *Prosecutorial Misconduct (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     F.    *Parole Revocation (Claims VII & VIII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          1.    *Standards Governing Parole Revocation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     G.    *Appellate Counsel (Claim XIII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
     H.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . 20
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
     I.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        *      *      *      *      *

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus and should deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Shannon Lockridge is a state prisoner, currently confined at the Oaks Correctional Facility in Manistee, Michigan.

2.    On March 15, 2007, petitioner was convicted of conducting a continuing criminal enterprise, MICH. COMP. LAWS § 750.159i, pursuant to his guilty plea in the Muskegon County Circuit Court.  On July 16, 2007, he was sentenced as an habitual offender to a term of 15-30 years' imprisonment.[1]

3.    Following his conviction, petitioner was appointed appellate counsel.  He subsequently filed a voluntary request to drop his appeal.  The trial court entered a stipulated order ending the appeal and permitting counsel to withdraw on December 27, 2007.

4.    On January 13, 2009, petitioner filed an application for the writ of habeas corpus raising nine grounds for relief.  Respondent filed a motion to dismiss for lack of exhaustion, and petitioner responded with a motion to stay the proceedings.  Upon my recommendation, the Court entered an Order denying respondent's motion to dismiss and granting petitioner's motion to stay on December 28, 2009.

5.    Petitioner returned to the state trial court, filing a motion for relief from judgment pursuant to MICH. CT. R. 6.500-.508, raising the 13 claims for relief that petitioner now raises in this court.  The trial court denied the motion on May 14, 2010.  *See People v. Lockridge*, No. 07-54378-FH (Muskegon County, Mich., Cir. Ct. May 14, 2010) [hereinafter "Trial Ct. op."].  The Michigan

---

[1]Petitioner was on parole for an unrelated offense at the time of his conviction.  His parole was revoked as a result of his continuing criminal enterprise conviction.

2

Court of Appeals and Michigan Supreme Court subsequently denied petitioner's applications for leave to appeal in standard orders. *See People v. Lockridge*, 489 Mich. 990, 800 N.W.2d 83 (2011); *People v. Lockridge*, No. 300088 (Mich. Ct. App. Oct. 28, 2010).

6.      On September 22, 2011, petitioner filed a second application for the writ of habeas corpus in this Court, raising 13 claims for relief.[2]  The bulk of petitioner's claims relate to his contention that the criminal complaint had no complaining witness and was not signed by a judge. Based on this contention, petitioner asserts that he was improperly charged (Claim I); he was improperly arrested in violation of the 4th Amendment (Claim II); he was improperly arraigned (Claim III); the felon information was invalid (Claim IV); his conviction was invalid (Claims V & IX); his sentencing as a fourth habitual offender was invalid (Claim X); the judgment of sentence was invalid (Claim XI); and the trial court was without jurisdiction (Claim XII).  Petitioner also claims that because the complaint was invalid, the prosecutor committed misconduct by arguing for a 15-30 year sentence (Claim VI).  Finally, petitioner contends that his parole was improperly revoked (Claims VII & VIII) and that his appellate counsel improperly moved to end his direct appeal (Claim XIII).

7.      Respondent filed her answer on April 24, 2012.  She contends that petitioner's Claims IX-XI are barred by petitioner's procedural default in the state courts, and that all of petitioner's claims are without merit.

8.      Petitioner filed a reply to respondent's answer on June 5, 2012.

B.      *The Plea and Appeal Proceedings*

---

[2]Petitioner's second application was docketed in a separate case, No. 11-14151.  On February 13, 2013, I entered an Order consolidating the cases, and directing that Case No. 11-14151 be closed.

Petitioner was convicted of conducting a continuing criminal enterprise pursuant to his guilty plea. Petitioner pleaded guilty pursuant to a plea agreement in which he agreed to fully and completely cooperate with the prosecution in its case against his codefendants, in exchange for the prosecution agreeing to inform the court at the time of sentencing of the extent of petitioner's cooperation. *See* Plea Tr., at 3-4. The trial court informed petitioner of the charges against him and the rights he was waiving by pleading guilty, and petitioner affirmed that he was pleading guilty freely and voluntarily. *See id*. at 6-12. Petitioner admitted that he cashed three fraudulent checks that he had been given by his codefendants using stolen identification, knowing that the checks were fraudulent. *See id*. at 13. Following his conviction, the trial court appointed appellate counsel for petitioner. On December 22, 2007, petitioner signed a statement in support of his request to end the appeal proceedings. In the statement, petitioner indicated that appellate counsel advised him that, based on her review of the file, petitioner had no viable appellate issues. He further indicated that he entered his plea freely and voluntarily, and that he did not cooperate with the prosecution. He therefore decided "voluntarily . . . and without any pressure whatsoever from my appellate counsel, to request that appointed counsel not pursue any appeal, ask the trial court to permit appellate counsel to end the appeal process and serve the balance of my sentence." The trial court subsequently entered a stipulated order ending the appeal process and permitting counsel to withdraw.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

4

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

5

U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.  As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131

S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Complaint Related Claims (Claims I-V and IX-XII)*

The bulk of petitioner's claims relate to his allegation that the criminal complaint was defective because it was not signed by a complaining witness or a judge. From this premise, petitioner argues that the trial court lacked jurisdiction and that he was improperly charged, arrested, arraigned, convicted, and sentenced as an habitual offender. Petitioner's complaint related claims fail for a number of reasons.

First, petitioner's premise is simply incorrect. Although petitioner attached a copy of an unsigned complaint to his state court motion for relief from judgment, in rejecting that motion the trial court noted that "[t]he copy in the court's file, however, is signed by the prosecuting attorney and the magistrate." Trial Ct. op., at 2 n.3. Petitioner has provided no basis on which to question this factual finding of the trial court. Moreover, the only requirement for a complaint under

7

Michigan law is that it "shall recite the substance of the accusation against the accused," MICH. COMP. LAWS § 764.1d; MICH. CT. R. 6.101(A), and that it "be signed and sworn to before a judicial officer or court clerk." MICH. CT. R. 6.101(B). There is no requirement that the complaint be signed and sworn to by an eyewitness or person with personal knowledge; factual allegations made upon "information and belief" are sufficient. *See People v. Cornell*, No. 306825, 2013 WL 195908, at *6 (Mich. Ct. App. Jan. 17, 2013) (per curiam) (discussing MICH. COMP. LAWS § 764.1a(3)); People v. Range, No. 270831, 2007 WL 2380277, at *5 (Mich. Ct. App. Aug. 21, 2007) (per curiam) ("[N]either MCL 764.1 d nor MCR 6.101(B) requires a victim to personally file a complaint against the accused.").

Second, even if the complaint was defective, this defect would provide no basis for habeas relief. It is well-established that habeas review does not extend to questions of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). "A determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam); *accord Rhode v. Olk-Long*, 84 F.3d 284, 287 (8th Cir. 1996); *Wesselman v. Seabold*, 834 F.2d 99, 102 (6th Cir. 1988); *United States ex rel. Holliday v. Sheriff of Du Page County, Ill.*, 152 F. Supp. 2d 1004, 1013 (N.D. Ill. 2001). As the Supreme Court has long explained, "there is nothing in the clauses of the 14th Amendment guarantying [sic] due process and equal protection which converts an issue respecting the jurisdiction of a state court under the Constitution and statutes of the state into anything other than

8

a question of state law[.]" *Gasquet v. Lapeyre*, 242 U.S. 367, 369 (1917).  Whether an indictment,

information, or complaint is sufficient to confer jurisdiction on a trial court is likewise an issue of

state law which is not cognizable on habeas review.  *See McKay v. Collins*, 12 F.3d 66, 69 (5th Cir.

1994); *Rose v. Johnson*, 141 F. Supp. 2d 661, 694 (S.D. Tex. 2001).  Challenges to the sufficiency

of a state court charging document will be cognizable on federal habeas review only where the

amendment deprives a petitioner of his due process right to fair notice of the charges against him.

*See Boothe v. Wyrick*, 452 F. Supp. 1304, 1310 (W.D. Mo. 1978).  Petitioner does not contend that

he lacked notice of the charges against him, and thus any defect in the complaint raises an issue of

state law not cognizable on habeas review.  *See Hill v. Ludwick*, No. 2:09-cv-11748, 2011 WL

5244824, at *5 (E.D. Mich. Nov. 3, 2011) (Roberts, J.).[3]

> Third, any defect in the preliminary proceedings leading to petitioner's conviction are not

---

[3]Further, even if the complaint was defective, petitioner cannot show that the circuit court lacked jurisdiction.  Although petitioner phrases his claim as going to the circuit court's subject matter jurisdiction, this type of jurisdiction is not implicated.  As the Michigan Supreme Court has explained, subject matter jurisdiction is "the right of the court to exercise jurisdiction over a class of cases." *People v. Goecke*, 457 Mich. 442, 458, 579 N.W.2d 868, 876 (1998).  Subject matter jurisdiction refers to the court's power to rule in the particular class of case in the abstract, not the court's power in the particular case before the court.  *See id.* at 458 n.16, 579 N.W.2d at 876 n.16.  The circuit court, as a court of general jurisdiction, *see* MICH. CONST. art. 6, § 13; MICH. COMP. LAWS §§ 600.151, .601, undoubtedly has the power to rule in criminal cases.  *See Goecke*, 457 Mich. at 458, 579 N.W.2d at 876.  Thus, the only question is whether the circuit court had personal jurisdiction over petitioner.  Under Michigan law, "[t]he circuit court acquires [personal] jurisdiction upon the filing of a proper return by the magistrate before whom the defendant has either been examined or waived examination." *People v. Gaines*, 53 Mich. App. 443, 447, 220 N.W.2d 76, 78 (1974) (citing *People v. Curtis*, 389 Mich. 698, 707, 209 N.W.2d 243, 247-48 (1973)); *see also, Goecke*, 457 Mich. at 458, 579 N.W.2d at 876.  Once that happened in petitioner's case, the circuit court did not lose jurisdiction even if the complaint or information filed by the prosecutor was defective in some way.  *See Goecke*, 457 Mich. at 458, 579 N.W.2d at 876 ("Having once vested in the circuit court, personal jurisdiction is not lost even when a void or improper information is filed."); *People v. Miklovich*, 375 Mich. 536, 539, 134 N.W.2d 720, 722 (1965) ("Jurisdiction, having once vested in the circuit court, was not lost by virtue of the granting of the motion to quash the information.").  Thus, even if the initial complaint filed by the prosecutor was defective, the circuit court nevertheless had jurisdiction over petitioner upon the filing of a proper return by the magistrate.

cognizable for an additional reason.  It is an "established rule that illegal arrest or detention does not void a subsequent conviction."  *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)).  Thus, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."  *Gerstein*, 420 U.S. at 119.  Because petitioner is now incarcerated pursuant to a valid conviction, he cannot challenge his conviction on the basis that he was arrested without probable cause or on the basis of an alleged defect in the state court's preliminary procedures.  *See, e.g.*, *Montoya v. Scott*, 65 F.3d 405, 421 (5th Cir. 1995); *Biby v. Satran*, 619 F. Supp. 1563, 1567-68 (D.N.D. 1985).

Finally, apart from petitioner's jurisdictional claim which, as explained above, raises only an issue of state law, the remainder of petitioner's claims based on the allegedly defective complaint were waived by his guilty plea.  "It is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects."  *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005).  As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Thus, petitioner's guilty plea waived any defects in the complaint.  *See Hawkins v. Grams*, No. 3:08-cv-226, 2008 WL 2564778, at *1 (W.D. Wis. June 25, 2008).

For these four reasons, the Court should conclude that petitioner is not entitled to habeas relief on any of his claims relating to the allegedly defective criminal complaint.

E.    *Prosecutorial Misconduct (Claim VI)*

Petitioner also asserts that the prosecutor committed misconduct by arguing for a sentence of 15-30 years' imprisonment in light of the allegedly defective complaint. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). *Darden* constitutes "[t]he 'clearly established Federal law' relevant" to a prosecutorial misconduct claim. *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case-determinations.'" *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In reviewing whether a prosecutor has deprived a defendant of a fair trial, a court may not consider the prosecutor's conduct in isolation, but must the conduct in the context of the entire proceedings. *See Brown v. Payton*, 544 U.S. 133, 144 (2005); *United States v. Young*, 470 U.S. 1, 11 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 636, 645 (1974). Even on direct review, where AEDPA deference does not apply, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's

comments standing alone." *Young*, 470 U.S. at 11.

2.   *Analysis*

Here, even without AEDPA deference petitioner cannot show that the prosecutor committed misconduct. As explained above, there was no defect in the criminal complaint, and even if there was that defect was waived by petitioner's guilty plea. That being the case, the prosecutor did not commit misconduct by arguing for a sentence within the law based on the prosecutor's good faith belief that petitioner's conviction was valid and the sentence appropriate. *Cf. Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008) ("A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.   *Parole Revocation (Claims VII & VIII)*

Petitioner next raises two claims challenging the revocation of his parole. The Court should conclude that petitioner is not entitled to habeas relief on these claims.[4]

1.   *Standards Governing Parole Revocation*

---

[4]Respondent argues that petitioner's parole revocation claims are not properly before the Court because they relate to a separate, earlier conviction. Rule 2(e) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[a] petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each courts." Rule 2(e), 28 U.S.C. foll. § 2254. This provision "permits, but does not require, an attack in a single petition on judgments based upon separate indictments or on separate counts event though sentences were imposed on separate days by the same court. A claim against a judgment of a court of a different political subdivision must be raised by means of a separate petition." *Id.*, advisory committee note, 1976 adoption. It is not clear, however, that this rule applies to a challenge to parole revocation. For example, in *Story v. Collins*, 920 F.2d 1247 (5th Cir. 1991), the court held that a petitioner could bring a single petition challenging both his conviction and the prison's failure to consider him for good time credit, reasoning that the state department of corrections was "not a state court, and the application of good conduct time is not a judgment." *Id.* at 1251; *see also*, *King v. Cox*, No. 4:08-CV-13671, 2008 WL 4449652, at *1 (E.D. Mich. Oct. 1, 2008) (Murphy, J.) (relying on *Story* to conclude that challenge to denial of parole can be brought in same petition that challenges underlying conviction). Accordingly, I address the claims on the merits.

In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Court held that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Id*. at 480. Nevertheless, noting that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty," the Court found that the parole revocation process is "within the protection of the Fourteenth Amendment." *Id*. at 482. Turning to "the nature of the process that is due," the Court set forth the minimal due process standards required for revocation as applied to each of the "two important stages in the typical process of parole revocation." *Id*. at 484-85.

"The first stage occurs when the parolee is arrested and detained, usually at the direction of his parole officers." *Id*. at 485. At this stage, the Court held, due process requires a preliminary hearing before someone not directly involved in the case to determine whether "reasonable ground exists for revocation of parole[.]" *Id*. In connection with this hearing, the state must provide the parolee: (1) notice of the hearing, its purpose, and the alleged violations; and (2) an opportunity to be heard, to present evidence, and to have the witnesses against him produced for questioning in his presence. *See id*. at 486-87. The hearing officer must make a summary of the hearing and determine whether there is probable cause to hold the parolee. *See id*. at 487.

If the hearing officer so concludes, the process moves to the second stage–the actual revocation of parole. At this stage, there "must . . . be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority." *Id*. at 487-88. At this stage of the parole revocation proceedings, the minimum requirements of due process require:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing

13

confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489.

2.  *Analysis*

Petitioner contends that he was denied due process in connection with the revocation of his parole because he was not afforded a revocation hearing and because the parole was improperly revoked on the basis of his invalid conviction. As to the latter argument, as explained above petitioner cannot show that his conviction was invalid, and thus he cannot show that the revocation of his parole based on that conviction was improper. As to the former argument, petitioner cannot show that the denial of a hearing deprived him of due process of law. Under Michigan law, a parolee is not entitled to a revocation hearing where the revocation is based upon a conviction for a new felony offense. *See People v. Bess*, 11 Mich. App. 109, 111, 157 N.W.2d 455, 456 (1968); MICH. COMP. LAWS § 791.240a(3). By administrative rule, the Michigan Parole Board, which is given almost unfettered discretion with respect to parole violations and revocations, *see Ex parte Casella*, 313 Mich. 393, 401, 21 N.W.2d 175, 178 (1946); MICH. COMP. LAWS § 791.240a, has determined that any parolee convicted of a felony offense shall be deemed to have violated his parole and be subject to reincarceration. *See* MICH. DEP'T OF CORRECTIONS POLICY DIRECTIVE 06.06.100, ¶ S (Mar. 1, 2013) ("A parolee convicted of a felony while on parole who receives a new sentence to be served with the Department shall be found to have violated parole based on that new conviction and sentence. A parole revocation hearing is not required.").[5]

---

[5]This provision is identical to the provision that governed at the time of petitioner's conviction and parole revocation. *See* MDOC POLICY DIRECTIVE 06.06.100, ¶ T (Feb. 26, 2007), *quoted in People v. Idziak*, 484 Mich. 549, 594 n.8, 773 N.W.2d 616, 641 n.8 (2009) (Kelly, J., concurring in part and

*Morrissey* requires a revocation hearing only where the factfinder retains discretion either to not find a violation or to not revoke parole based on consideration of mitigating factors.  Where there is no such discretion, *Morrissey* does not require a hearing.  *See Kellogg v. Shoemaker*, 46 F.3d 503, 507-08 (6th Cir. 1995); *Sneed v. Donahue*, 993 F.2d 1239, 1243-44 (6th Cir. 1993); *Pickens v. Butler*, 814 F.2d 237, 239 (5th Cir. 1987) (all discussing *Black v. Romano*, 471 U.S. 606, 612 (1985)).  As has been explained by another district court:

> The typical parole revocation proceeding involves two distinct components: (1) the "retrospective question" whether the parolee violated a condition of his parole, and (2) the discretionary question whether the violation warrants revocation. See *Black v. Romano*, 471 U.S. 606, 611, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985). When parole revocation is based upon the commission of a new criminal offense, no hearing is necessary on the first question, as the parole violation is proven by the criminal judgment itself. Nevertheless, where the parole board retains discretion concerning the consequence of the conviction, a hearing on the second question (sometimes called "mitigation") is constitutionally required. *Black*, 471 U.S. at 612.
> . . . .
> Plaintiff's right to a mitigation hearing, as enunciated by the Supreme Court and Sixth Circuit and declared by this court's previous judgment, does not exist in the abstract. A parolee only has the right to a hearing when he is deprived of his liberty by the exercise of parole board discretion. *See Black*, 471 U.S. at 612; *Kellogg v. Shoemaker*, 46 F.3d 503, 508-09 (6th Cir.1995); *Sneed v. Donahue*, 993 F.2d 1239, 1243-44 (6th Cir.1993). *Morrissey* and its progeny do not require that a parole board be given discretion regarding when to revoke a parolee's status; rather, those cases simply require "that where such discretion is given, a revocation hearing is required." *Sneed*, 993 F.2d at 1244. In the present case, it is clear that plaintiff's present loss of liberty is a consequence of the criminal judgment handed down by the Wayne County Circuit Court, not any act of discretion by the Parole Board. That is why the Board "rescinded" parole. Plaintiff was in prison on a new conviction, and further release on parole was impossible until the minimum term on that sentence was served.

*Witzke v. Sampson*, No. 1:87-CV-944, 2008 WL 5156766, at *2-*3 (W.D. Mich. Dec. 9, 2008); *see also*, *Kellogg*, 46 F.3d at 508 (no right to a revocation hearing "once a subsequent parole violation

dissenting in part).

15

conviction had been established and the law gave the parole agency no authority to consider further mitigating factors.").

The fact that the Board itself removed factfinder discretion by administrative rule, rather than having such discretion removed by virtue of a state statute, does not alter this conclusion. The Sixth Circuit considered and rejected such a claim in *Kellogg*, explaining:

> The agency has chosen to address these cases by administrative rule, which is logical as those parolees who have been *convicted* of another felony while on parole have already had a trial or hearing to determine whether they actually committed the offense charged. The agency has also concluded, by administrative rule, that no mitigating circumstances would overcome a subsequent conviction of another felony committed while on parole; thus, an individual hearing would be unnecessary. The agency's conclusion is a permissible one[.]

*Kellogg*, 46 F.3d at 507 (footnote omitted); *cf. Lopez v. Davis*, 531 U.S. 230 (2001) (federal agency granted discretion to administer statute may do so through adoption of categorical rules). Because the factfinder at a revocation hearing would not have had discretion to either find no violation or to continue parole, the denial of a hearing did not deprive petitioner of his right to due process of law. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

G.   *Appellate Counsel (Claim XIII)*

Finally, petitioner contends that his appellate counsel improperly moved to withdraw and end his appeal proceedings. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.   *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To

16

establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

Where a defendant claims that counsel failed to file an appeal, the performance inquiry depends both on what defendant told counsel and on the circumstances of the case. In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Court explained that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id*. at 477. Conversely, "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id*. In the middle ground–that is, in cases in which "the defendant has not clearly conveyed his wishes one way or the other," *id*.–the Court explained that

> the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Id*. at 478.  The Court further explained that although counsel should ordinarily directly consult a defendant about an appeal, "we cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient."  *Id*. at 479.  Rather, the Court held "that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  *Id*. at 480.

With respect to prejudice, the defendant need not show prejudice in the sense of having a potentially meritorious appellate claim, *see id*. at 486.  However, he must still show prejudice in the sense that "counsel's deficient performance . . . actually cause[d] the forfeiture of the defendant's appeal."  *Id*. at 484.  "If the defendant cannot demonstrate that, but for counsel's deficient performance, he would [not have lost his appeal], counsel's deficient performance has not deprived him of anything, and he is not entitled to relief."  As the Court observed, under this standard "the prejudice inquiry . . . is not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently in the first place."  *Id*. at 486.

2.     *Analysis*

Here, petitioner cannot show that he was denied an appeal by the acts or omissions of counsel under *Flores-Ortega*.  On December 22, 2007, petitioner signed a statement in support of his request to end the appeal proceedings.  In this statement, petitioner indicated that his appellate counsel visited him to discuss potential appellate issues.  *See* Statement, ¶ 6 (docket #16-8).  She advised petitioner that he had no viable appellate issues because, under Michigan law, the only

18

potential appellate issues with respect to a plea are that the plea was not knowing and voluntary or

that there was no factual basis for the plea. Petitioner stated that he "cannot make such a claim since

I entered into the plea agreement knowingly and voluntarily" and "[t]he factual basis was supplied

by my testimony at the entry of the plea." *Id.*, ¶ 7. Petitioner also stated that counsel advised him

that because he "was sentenced according to the correctly scored guidelines, [he] had no basis upon

which to challenge [his] sentence." *Id.*, ¶ 8. Based on these factors, petitioner stated:

> 9.    After discussing this matter with my appellate counsel, I have voluntarily decided and without any pressure whatsoever from my appellate counsel, to request that appointed counsel not pursue any appeal, ask the trial court to permit appellate counsel to end the appeal process and serve the balance of my sentence.

> 10.    I am satisfied with my appellate counsel and I honestly believe that she has rendered competent and professional advice regarding my right to continue with this appeal.

> 11.    I make this statement of my own free will, without duress or coercion from anyone and I request my appellate counsel to file the necessary papers with the trial court to terminate the appeal process.

*Id.*, ¶¶ 9-11.

Petitioner does not allege that he did not freely and voluntarily sign this statement. In light

of this statement, petitioner cannot show that counsel's deficient performance deprived him of his

right to appeal. *See Miller v. United States*, No. 1:02-CR-266, 2005 WL 2990193, at *9 (W.D.

Mich. Nov. 8, 2005). As the Court explained in *Flores-Ortega*, "a defendant who explicitly tells

his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions,

his counsel performed deficiently." *Flores-Ortega*, 528 U.S. at 477. At most, petitioner could claim

that counsel's advice leading him to this decision was ineffective. However, petitioner cannot show

that counsel's advice was constitutionally deficient. Counsel accurately described to petitioner the

scope of issues available to a defendant who has pleaded guilty. Petitioner does not claim that his

plea was unknowing or involuntary, or that there was no factual basis for the plea.  Nor does petitioner contend that there was any error in the scoring and application of the sentencing guidelines.  To the extent petitioner faults counsel for not recognizing and advising him of the claims he raises here, as explained above each of those claims is without merit.  Accordingly, petitioner cannot show that counsel's advice leading to his decision to abandon an appeal was deficient, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to

deserve encouragement to proceed further.'"" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893

n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new

Act does, however, require that certificates of appealability, unlike the former certificates of

probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C.

§ 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254

Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a

certificate of appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of

Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not

issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory

committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either

grant or deny the certificate of appealability at the time of its final adverse order, I include a

recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the

Court should also conclude that petitioner is not entitled to a certificate of appealability.  As

explained above, it is well established that petitioner's claims relating to the complaint are not

cognizable on habeas review for several reasons, and thus the resolution of these claims is not

reasonably debatable.  It follows that the resolution of petitioner's prosecutorial misconduct claim is likewise not reasonably debatable.  With respect to petitioner's parole revocation claims, binding Sixth Circuit law clearly establishes that, because there was no discretion in revoking petitioner's parole, a revocation hearing was not required by the Due Process Clause.  Thus, the resolution of this claim is not reasonably debatable.  Finally, because it is clear that counsel honored petitioner's wishes in abandoning an appeal, and because counsel's advice regarding an appeal was not deficient, the resolution of petitioner's ineffective assistance claim is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

I.     *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's habeas claims are without merit.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local*

*231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 8, 2013                    S/Paul J. Komives                              
                                        Paul J. Komives
                                        United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 8, 2013, by electronic and/or ordinary mail.

                                        S/Shawntel R. Jackson                         
                                        Case Manager